UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ARTHREX, INC., a Delaware
Corporation, and ALLOGRAFT TISSUE
SYSTEMS, INC., f/k/a ARTHREX TISSUE
SYSTEMS, INC., a Delaware
Corporation,

          Plaintiffs,

vs.                       Case No.  2:05-cv-121-FtM-33DNF

ORTHOGEN AKTIENGESELLSCHAFT, a
German Corporation,

          Defendant.
_____/

## ORDER

This matter comes before the Court on Defendant Orthogen AG's Motion to Dismiss (Doc. # 14), which was filed on November 8, 2005. Plaintiffs filed a Response in opposition to the motion to dismiss (Doc. # 21) on December 2, 2005.

Defendant seeks an order dismissing Plaintiffs' complaint pursuant to Rule 12(b)(3), Fed. R. Civ. P., on the basis of improper venue.  In addition, Defendant seeks an Order dismissing Plaintiffs' complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim against Defendant.  Defendant seeks attorneys' fees and costs in the instance that its motion to dismiss is granted.

Upon due consideration, the Court finds that Defendant's motion to dismiss should be **GRANTED.**

I.    **Background**

Plaintiffs Arthrex, Inc. ("Arhtrex") and Allograft Tissue Systems, Inc. ("ATS") filed their five count complaint against Defendant Orthogen Aktiengesellschaft ("Orthogen AG") on March 24, 2005. (Doc. # 1).   This Court has jurisdiction over the present matter pursuant to diversity of citizenship.   28 U.S.C. § 1332.   As stated in the complaint, Arthrex is a Delaware corporation with its principal place of business in Naples, Florida.   Arthrex is the parent company of ATS, and both are in the business of developing products for arthroscopic and orthopedic surgical procedures. Defendant Orthogen AG and its subsidiaries are German corporations and are in the business of developing medical devices and processes for treating arthritis in humans and animals.[1]

On or about September 27, 2001, ABS (a wholly-owned subsidiary of Plaintiff Arhtrex) and Orthogen International (a wholly-owned subsidiary of Defendant Orthogen AG) entered into a Exclusive Distribution Agreement.   As stated in the complaint, "ABS acted as Arhtrex's agent in entering into the Agreement with Orthogen Int'l. At all times material, Orthogen Int'l and Orthogen AG treated Arthrex as the real party in interest with respect to the Exclusive Distribution Agreement." (Doc. # 1 at 4).   The complaint further

---

[1] The wholly-owned subsidiaries of Orthogen AG, as named in the complaint, follow: Orthogen International GmbH, Orthogen Therapeutics GmbH, Orthogen Lab Services GmbH, and Orthogen Veterinary GmbH. (Doc. # 1 at 2).

states that "Arthrex reasonably believed that it would have the exclusive licence to distribute any future-developed Orthogen Products, or future modifications to existing Orthogen Products, made available for sale in the U.S." (Doc. # 1 at 5).  Several new products have been developed by Orthogen AG, and Arthrex claims that those products are covered by the September 27, 2001 Agreement.  Plaintiffs assert that, if the new products are not covered by the September 27, 2001 Agreement, "the correspondence and course of dealings between Arthrex, ATS, and Orthogen AG, formed a separate contract between these parties." (Doc. # 1 at 5). Plaintiffs assert that Defendant breached the Agreement via a March 11, 2005 e-mail from the CFO of Orthogen AG and due to a demand by Defendant's wholly-owned subsidiary, Orthogen Vet, that Plaintiffs pay Orthogen Vet the amount of $361,800.00.  In sum, Plaintiffs assert:

> [I]t appears that Orthogen AG has decided that it will both cause Orthogen Int'l [an Orthogen AG wholly-owned subsidiary] not to honor its obligations under the Exclusive Distribution Agreement, and violate Orthogen AG's own obligations under the EOT/IRAP Contract, regarding the EOT syringe and IRAP products.  It appears that Orthogen AG intends to usurp Arthrex and ATS' contractual rights, and to unjustly enrich itself to Plaintiffs' detriment, by distributing the rights to the EOT Syringe, IRAP and other Orthogen Products to third parties, through two of Orthogen AG's other wholly-owned Subsidiaries, Orthogen Lab and Orthogen Vet.

(Doc. # 1 at 8).

In addition to these allegations, Plaintiffs assert that Orthogen AG has wrongfully demanded that Arthrex turn over its

customer list to Orthogen Vet and that Defendant has contacted third parties to attempt to persuade such third parties to terminate their business relationships and contacts with Plaintiffs and to do business with Orthogen AG, instead.

Accordingly, Plaintiffs sue Defendant as follows: (1) Plaintiff Arthrex only sues Defendant for tortious interference with contract; (2) both Plaintiffs sue Defendant for breach of contract; (3) both Plaintiffs sue Defendant for promissory estoppel; (4) both Plaintiffs sue Defendant for unjust enrichment; and (5) both Plaintiffs sue Defendant for tortious interference with business relationships.

## II.  Analysis

Defendant's motion to dismiss asserts that the case should be dismissed pursuant to Rule 12(b)(3), Fed. R. Civ. P., for improper venue, and that the action should, instead, be litigated in Germany pursuant to the forum selection clause of the Exclusive Distribution Agreement.  Defendant also asserts that the case should be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim.  This Court will first address whether venue is proper.  If the Court determines that venue is proper, the Court will proceed to analyze Defendant's Rule 12(b)(6), Fed. R. Civ. P., arguments.

**A.    Venue**

**i.    Standard of Review**

The Eleventh Circuit reviews decisions to enforce forum selection clauses in international contracts, such as the one in this case, under the de novo standard of review:

> Although ordinarily we review the dismissal of a lawsuit for improper venue under the standard of abuse of discretion, we conclude that there is good reason to treat district court decisions regarding the enforceability of forum-selection and choice-of-law provisions in international agreements as decisions of law reviewable de novo. Not only do such decisions at times require interpretation of the provisions of a contract--determinations that we review de novo--but such decisions also, at least in the context of international agreements, require complex analysis of fundamental fairness and public policy . . . determinations that are quintessentially legal. We therefore hold that the enforceability of forum-selection an choice-of-law provisions in international agreements are questions of law that we review de novo.

Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir. 1998)(citations omitted).

**ii.  Summary of the Arguments**

Defendant argues that, because of the forum selection clause in the Exclusive Distribution Agreement, this action was filed in an improper venue and should, instead, be heard in Germany. Defendant asserts that Plaintiffs have brought this action in Florida, rather than in Germany "in an apparent effort to wear down or harass Orthogen AG through costly litigation in a distant country." (Doc. # 14 at 3).

The forum selection clause, at section 10.6 of the Exclusive Distribution Agreement, provides: "The exclusive Forum for all claims out of or in connection with this Agreement shall be the Landgericht Munchen I."  In addition, Section 10.5 of the agreement states that the contract will be construed under German law.

Plaintiffs present two arguments in opposition to Defendant's motion to dismiss: (1) Defendant AG is not a party entitled to enforce the forum selection clause of the Exclusive Distribution Agreement and (2) even if Orthogen AG could enforce the Agreement, the clause would not apply to the causes of action brought against Orthogen AG, as those causes of action involve a separate agreement.   In essence, Plaintiffs contend that the matter presently disputed is separate from the contract containing the forum selection clause and that the matter presently disputed is governed by a separate agreement and that such agreement's forum is not governed by any agreement.[2]

---

[2] Plaintiffs' complaint contains some discussion of this claim:

Plaintiffs are not asserting claims in this action arising out of the Exclusive Distribution Agreement. Claims arising from the Exclusive Distribution Agreement, and a related "Worldwide Agreement," are the subject of two separate lawsuits between German companies ABS and Orthogen Int'l in Munich, Germany; and between ABS and Orthogen AG in Dusseldorf, Germany (together the "German Lawsuits").  In this action, Arthrex and ATS are seeking recovery against Orthogen AG, a non-party to the Exclusive Distribution Agreement, for *inter alia*, tortiously interfering with the Agreement, and/or for breaching the EOT/IRAP Contract between Delaware/Naples corporations Arthrex and ATS on the one hand, and German

### iii. <u>**Enforceability of Forum Selection Clauses**</u>

It is well established that this Court should enforce the terms of a forum selection clause absent a showing that to do so "would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." <u>The Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 15 (1972).  In addition, the Eleventh Circuit has enunciated the following principles relating to forum selection clauses:

> The following principles have been established for consideration of whether a case should be removed to anther jurisdiction pursuant to a forum selection clause.
> 1.  Forum selection clauses in contracts are enforceable in federal courts.
> 2.  Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law under 28 U.S.C. § 1404(a)(1982), not state law.
> 3.  The burden is on the party opposing the enforcement of the forum selection clause to show that the contractual forum is sufficiently inconvenient to justify retention of the dispute.
> 4.  The validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general.
> 5.  Under Section 1404(a), the court should consider the convenience of the parties and witnesses and the interest of justice, with a choice of forum clause a significant factor that figures centrally in the district court's calculus.  Thus, while other factors might conceivably militate against a transfer the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors.
> 6.  By enforcing the contractual forum, the Court is

---

corporation, Orthogen AG, on the other, which was to be performed in material part, in Naples, Florida.

(Doc. # 1 at 9).

> not attempting to limit the plaintiff's usual right
> to choose its forum, but is enforcing the forum
> that the plaintiff has already chosen.

P & S Bus. Machs., Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th
Cir. 2003)(internal citations, quotations and emphasis omitted).

Further, in analyzing a forum selection clause, this Court
must determine whether the clause is mandatory or permissive.  Fla.
Polk County v. Prison Health Servs. Inc., 170 F.3d 1081, 1083 (11th
Cir. 1999).  Mandatory clauses "unambiguously designate the forum
in which the parties must enforce their rights under the contract."
Id. at n. 8.  "If a forum selection clause does not provide options
or create uncertainties in the interpretation of the clause, it
will be founds to be mandatory."  Pelican Ventures LLC v. Azimut
S.p.A., Case No. 03-62119-CIV-MARTINEZ-KLEIN, 2004 U.S. Dist. LEXIS
26764, at * 8-9 (S.D. Fla. July 28, 2004).

In this case, the forum selection clause is mandatory.  The
clause includes the term "exclusive" and is unambiguous.

Even if the forum selection clause is the product of fair
dealing, the court must consider whether the "chosen forum is
*seriously* inconvenient for the trial of the action." Stewart Org.,
Inc. v. Ricoh Corp., 810 F.2d 1066, 1070 (11th Cir. 1987)(citation
omitted).   Further, because this case has international
implications, this Court is required to consider pubic policy
concerns.  Lipcon, 148 F.3d at 1295 ("A Court will invalidate a
choice clause in an international agreement when enforcement would

8

contravene a strong public policy of the forum in which the suit is brought"). (citations and quotations omitted).

Plaintiffs, as the parties disputing the forum selection clause in this cause, bear the burden and must "show that trial in the contractual forum will be so gravely difficult and inconvenient that [they] will for all practical purposes be deprived of [their] day in court.  Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold [Plaintiffs] to [their] bargain." Stewart, 810 F.2d at 1070.

Plaintiffs have not made this showing, and, in fact, have presented no arguments concerning the possible inconvenience of the forum.  In addition, Plaintiffs have not raised any public policy arguments.  Plaintiffs' complaint indicates that there are two cases currently being litigated in Germany and such cases are related to the complaint filed in this case.

In conducting its analysis of the factors and considerations stated above, this Court agrees with Defendant that "all of Plaintiffs' claims arise 'out of or in connection with' the Exclusive Distribution Agreement.  The Exclusive Distribution Agreement is expressly relied upon in each count of the complaint, and is obviously the centerpiece of this litigation." (Doc. # 14 at 4).

In finding that the forum selection clause applies to each of Plaintiffs' claims against Defendant, the Court has relied upon the

Stewart Organization, Inc., case.  In Stewart, the court construed a forum selection clause containing language similar to the language in the clause presented in this case and determined the clause should be enforced.[3]  The Eleventh Circuit upheld the trial court's transfer of the case from Alabama to New York pursuant to the clause even though the plaintiffs in that action, similar to the Plaintiffs in the present case, brought breach of contract claims in addition to other claims, such as fraud.[4]  In upholding the enforcement of the forum selection clause, Eleventh Circuit reasoned:

> [I]t is clear from the language of the agreement that the forum selection clause encompassed any dispute arising out of or in connection with the dealer-manufacturer relationship.  The contract refers to any "case or controversy arising under or in connection with this Agreement."  This includes all causes of action arising directly or indirectly from the business relationship evidenced by the contract.

Stewart, 810 F.2d at 1070.

Further, the Eleventh Circuit described as "ill-founded" any concern that the forum selection clause only pertained to claims

---

[3] In Stewart, the forum selection clause stated that the courts in New York City, the Borough of Manhattan, would have "exclusive jurisdiction over any case or controversy arising under or in connection with th[e] Agreement . . ." 810 F.2d at 1067.

[4] In Stewart, the plaintiffs sued for breach of contract and brought additional claims for breach of warranty, fraud, and antitrust.  In the instant case, the Plaintiff sue for breach of contract but also assert promissory estoppel as well as tort and unjust enrichment.

for breach of contract.[5]

In addition, this Court follows the reasoning used by the court in <u>Velazquez v. USA Sogo, Inc.</u>, Case No. 97-1766-CIV-MOORE, 1999 U.S. Dist. LEXIS 12348, at * 7 (S.D. Fla. June 17, 1999) that

---

[5] The Eleventh Circuit's unabridged analysis on this point follows:

> The final issue to be addressed is whether this forum selection clause is sufficiently broad to require the transfer of all claims to a New York court. The district court was concerned that this clause would "not control the forum for trying those counts or causes of actions which are not contractual in nature, so that a transfer of the causes insofar as based on claims of breach of contract would simply split the controversy between forums and waste judicial resources." This refers to the claims of breach of warranty, fraud, and the antitrust claims. The district court's concern is ill-founded for two reasons. *First*, it is clear from the language of the agreement that the forum selection clause encompassed any dispute arising out of or in connection with the dealer -- manufacturer relationship. The contract refers to *any* "case or controversy arising under or in connection with this Agreement." This includes all causes of action arising directly or indirectly from the business relationship evidenced by the contract. In *Bense*, the Second Circuit read the language of a forum selection clause that encompassed actions arising "directly or indirectly" from the contract as permitting the court to order transfer of the entire case. 683 F.2d at 720. This principle is sound because it promotes a more orderly and efficient disposition of the case in accordance with the parties intent. This is consistent with the Supreme Court's directive in *The Bremen* to encourage commercial reliance on forum selection clauses and thus keep intact the usefulness of these agreements. Commercial contractual issues are commonly intertwined with claims in tort or criminal or antitrust law.

<u>Stewart</u>, 810 F.2d at 1070.

follows in holding that the forum selection clause applies to the

present action filed by Plaintiffs and should be enforced:

> Although this clause relates to the Participation
> Agreement, by its terms, it also relates to the overall
> rights and obligations of the parties to one another, and
> not specifically to the underlying agreement.  In other
> words, the clause is not limited to claims "relating to"
> or "arising under" the Agreement.  Also, such clauses
> apply to a wide range of claims.  See Stewart
> Organization, Inc. v. Ricoh Corporation, 810 F.2d 1066,
> 1070 (11th Cir. 1987) in which the Eleventh Circuit Court
> of Appeals held that where a contract refers to "any
> 'case or controversy arising under or in connection with
> this Agreement' . . . [it] includes all causes of action
> arising directly or indirectly from the business
> relationship evidenced by the contract."

Id.

Again, as mentioned by Defendant, each count of the complaint

references the Exclusive Distribution Agreement that contains the

forum selection clause and the Agreement is "the fountainhead from

which all of Plaintiffs' claims flow." (Doc. # 14 at 6).  Each

count of Plaintiffs' complaint arises "out of or in connection

with" the business relationship governed by the Exclusive

Distribution Agreement.  Plaintiffs' complaint states that "ABS

acted as Arthrex's agent in entering into the Agreement with

Orthogen International.  At all times material, Orthogen

International and Orthogen AG treated Arthrex as the real party in

interest with respect to the Exclusive Distribution Agreement."

(Doc. # 1 at 4).  Plaintiffs do not have the option of relying on

the terms of the Agreement to sue Defendant and while ignoring the

mandatory forum selection clause unambiguously stated in the

Agreement.   Thus, the forum selection clause applies to each of Plaintiffs' claims.

Plaintiffs' argument that the forum selection clause does not apply to Defendant is also unpersuasive.   Plaintiffs correctly point out that Orthogen AG is not a signatory to the Exclusive Distribution Agreement.   It was Defendant Orthogen AG's wholly-owned subsidiary, Orthogen International, that was the signatory to the contract.   This Court sees the distinction between parent and subsidiary in this case, and is not equating the two; however, the Court rules that, consistent with Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285 (11th Cir. 1998), that Defendant is "closely related" to the dispute and that it was foreseeable that Defendant would be bound by the agreement.   In Lipcon, the Eleventh Circuit evaluated the issue currently disputed in the present case: whether non-parties to a contract may be bound by it forum selection clause.   The Court held: "In order to bind a non-party to a forum selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound." Id. at 1299. (Internal citations omitted).   See also Manetti-Farrow, Inc. v. Gucci Am. Inc., 858 F.2d 509, 514 n. 5 (9th Cir. 1988)("[A] range of transaction participants, parties, and non-parties, should benefit from and be subject to forum selection clauses.").

13

Here, taking into consideration the mandatory nature of the forum selection clause, the fact that related litigation is already underway in Germany, that the parties in this suit are closely related to the parties currently litigating in Germany, and for the reasons stated in this Order, this Court determines that forum selection clause should be enforced.  Finding that venue is not proper, this Court declines to address Defendant's Rule 12(b)(6), Fed. R. Civ. P., arguments.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Orthogen AG's Motion to Dismiss (Doc. # 14) is **GRANTED.**  This case is dismissed pursuant to Fed. R. Civ. P. 12(b)(3).  The clerk is directed to terminate all pending motions and deadlines and to close this case.

(2)   Defendant's request for attorney's fees is **DENIED.**

**DONE** and **ORDERED** in Chambers in Ft. Myers, Florida, this 10th day of May, 2006.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All counsel of record

14